## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA

### PANAMA CITY DIVISION

---

| | |
|---|---|
| **JOSÉ ARAIZA-CALZADA, MANUEL VERA-LOPEZ, ANTONIO AGUIRRE-SANCHEZ, JOSÉ GUADALUPE AGUIRRE-SANCHEZ, RIGOBERTO AGUIRRE-SANCHEZ, JOSÉ DE JESUS MANDUJANO-PAREDES, AND JOSÉ GUADALUPE MANDUJANO-PAREDES** ) ) ) ) ) ) ) ) | |
| | CIVIL ACTION |
| **Plaintiffs,** ) | No. _____ |
| **vs.** ) | |
| ) | |
| **WEBB'S SEAFOOD, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

---

### COMPLAINT FOR DAMAGES, COST OF LITIGATION, DECLARATORY RELIEF, INJUNCTIVE RELIEF AND ATTORNEY'S FEE

### PRELIMINARY STATEMENT

1.     This is an action brought by seven migrant agricultural workers employed during two separate seasons between April and December 2011 by Webb's Seafood, Inc. of Youngstown, Florida.  Plaintiffs bring this action to secure and vindicate rights afforded them by the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.* ("FLSA"), the minimum wage provisions of the Florida Constitution, Article X , Section 24, and the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§1801, *et seq.* ("AWPA").

2.     Defendant Webb's Seafood, Inc. failed to pay Plaintiffs minimum wages as required by the FLSA and the Florida Constitution. In addition, Webb's Seafood, Inc. violated

the recordkeeping, wage statement, wage payment and working arrangement provisions of the AWPA and failed to pay wages and provide other benefits as required by federal regulations applicable to the Plaintiffs' employment as guest workers.

3.     Plaintiffs seek to recover their money damages, declaratory and injunctive relief, consequential, and compensatory damages and pre- and post-judgment interest to make them whole for damages each of them suffered due to Defendant's violations of the law.   Plaintiffs seek declaratory and injunctive relief to ensure that they and other employees of Webb's Seafood, Inc. are not subjected to similar practices in the future.

## JURISDICTION

4.     Jurisdiction is conferred upon this Court by 29 U.S.C. §216(b), this action arising under the FLSA; by 29 U.S.C. §1854(a), this action arising under the AWPA; by 28 U.S.C. §1331, this action arising under the laws of the United States; and 28 U.S.C. §1367, providing supplemental jurisdiction over Plaintiffs' state law claims, because these state claims are so related to the federal claims that they form part of the same case or controversy

5.     Declaratory relief is authorized pursuant to 28 U.S.C. §§2201 and 2202.

## VENUE

6.     Venue is proper in this district pursuant to 28 U.S.C. §§1391(b) and (c). As set out herein, a substantial part of the events giving rise to Plaintiffs' claim arose in this district. Defendant is a resident of this district, headquartered in Bay County, Florida.

## PARTIES

7.      Plaintiffs are citizens of and reside in Mexico.  At all times relevant to this action, Plaintiffs were admitted to the United States under the H-2B temporary foreign worker visa program administered by the U.S. Department of Labor pursuant to 8 U.S.C. §1101(a)(15)(H)(ii)(b).

8.      At all times relevant to this action, Plaintiffs were migrant agricultural workers within the meaning of the AWPA, 29 U.S.C. §1802 and 29 C.F.R. §500.20(p), in that they were employed in agricultural employment of a seasonal or temporary nature handling and processing oysters, an agricultural commodity, in their unmanufactured state.

9.      Defendant Webb's Seafood, Inc. is a closely held Florida corporation that operates and maintains its principal address in Youngstown, Bay County, Florida.  At all times relevant to this action, Defendant was engaged in commerce within the meaning of the FLSA, 29 U.S.C. §203(s)(1)(A) in that it operated an oyster processing plant that imported and sold its products to businesses in various states.  At all times relevant to this action, Defendant employed Plaintiffs within the meaning of the FLSA, 29 U.S.C. §203(g).

10.      At all times relevant to this action Defendant Webb's Seafood, Inc. was an agricultural employer of Plaintiffs within the meaning of the AWPA, 29 U.S.C. § 1802(2), in that it operated a processing facility and employed Plaintiffs and other migrant agricultural workers.

## **FACTS**

### **(H-2B Visas and Recruitment of Workers)**

11.    An employer in the United States may import aliens to perform unskilled labor of a temporary nature if the United Stated Department of Labor certifies that: (1) there are insufficient available workers within the United States to perform the job, and (2) the employment of aliens will not adversely affect the wages and working conditions of similarly situated U.S. workers. 8 U.S.C. §1101(a)(15)(H)(ii)(b).  Aliens admitted in this fashion are commonly referred to as "H-2B workers."

12.    An employer seeking the admission of H-2B workers must first file a temporary labor certification application with the United States Department of Labor. 20 C.F.R. §655.20 (2008).  This application must include an attestation from the employer that it will abide with applicable regulatory requirements, including:

   a. Payment to all workers of at least the applicable prevailing wage during the entire period of the H-2B labor certification. 20 C.F.R. §655.22(e) (2008).  The applicable prevailing wage for the Plaintiffs' employment during 2011 was $9.20 per hour.

   b. Prohibition of payments to foreign recruiters from perspective employees who the employer engaged in recruitment of H-2B workers 20 C.F.R. §655.22(g)(2); and

   c. Limiting deductions from wages to those that are "reasonable."  The Department of Labor has determined that expenses related to the worker's procurement of a visa and traveling from his home to the employer's worksite primarily benefit the employer and are not "reasonable" within the meaning of the FLSA. Accordingly, the employer must pay the worker's inbound transportation and visa

4

fees in instances in which shifting these costs to the worker would effectively bring his earnings below the applicable prevailing wage for the first workweek of employment.  20 C.F.R. §655.22(g)(1) (2008) and Field Assistance Bulletin No. 2009-2, August 21, 2009.

13.     Because of a chronic shortage of domestic workers to perform support services for its oyster business, Defendant applied for temporary labor certification to employ foreign workers to perform certain jobs during 2011 and 2012, including *inter alia*, the shucking and packaging of oysters.  The two temporary labor certification applications identified Defendant as a prospective employer of H-2B workers and sought certification for a period from April 12, 2011 to July 29, 2011 ("Spring 2011 season") and October 3, 2011 to July 31, 2012 ("Fall 2011-12 season").  The workers were to be employed, *inter alia*, handling and processing oysters in their unmanufactured state.  Each of the temporary labor certifications contained an attestation pursuant to 20 C.F.R. §655.22 (2008), that Webb's Seafood, Inc. would abide with applicable regulatory requirements, including those described in Paragraph 12.

14.     The United States Department of Labor reviewed Defendant's temporary labor certification applications, which incorporated the terms described in Paragraph 12.  The United States Department of Labor ultimately approved each of Defendant's temporary labor certification applications pursuant to 20 C.F.R. §655.23(b), allowing Defendant to import H-2B workers to fill the manpower needs set out in its temporary labor certification application for the periods from April 12, 2011 to July 29, 2011 and from October 3, 2011 to July 31, 2012.

15.     Plaintiffs reside in the state of Mexico City and Guanajuato in Mexico.

16.     Prior to the commencement of the Spring 2011 oyster processing season, Ester Gallegos, acting in her capacity as Defendant's agent, hired Plaintiffs and processed their

applications for issuance of H-2B visas for employment on Defendant's operations.  Plaintiffs

were required to pay Ester Gallegos from $280.00 to $300.00 for visa processing fees to be paid

to the United States Consulate and other costs.  Following interviews at the United States

Consulate in Monterrey, Nuevo Leon, Mexico, Plaintiffs were issued H-2B visas for

employment with Webb's Seafood, Inc. for a period from April 7, 2011 through July 29, 2011.

Plaintiffs then traveled from Monterrey to Defendant's jobsite in Florida, where they were

employed shucking oysters from April through July, 2011, after which time they returned to their

homes in Mexico.

       17.     Prior to the commencement of the Fall 2011-12 oyster processing season,

Plaintiffs were hired by Rene Urbano to perform the job duties described in the temporary labor

certification application submitted by Webb's Seafood, Inc.  Acting as Defendant's agent,

Urbano processed Plaintiffs' visa applications.  Plaintiffs were required to pay Rene Urbano

from $280.00 to $300.00 for visa processing fees due to the United States Consulate and other

costs.  Following interviews at the United States Consulate in Monterrey, Nuevo Leon, Mexico,

Plaintiffs were issued H-2B visas for employment with Webb's Seafood, Inc. for a period from

October 3, 2011 through July 31, 2012.

       18.     On both occasions, Plaintiffs were required to pay for the costs of transportation

from their hometowns to Monterrey, where they had their required consular interviews for

issuance of the H-2 B visas.  Plaintiffs also paid their own transportation expenses from

Monterrey to Youngstown, Florida after being issued their H-2B visas.

       19.     After receiving their H-2B visas, Plaintiffs entered the United States at

Brownsville, Texas, where on each occasion they paid $6.00 to U.S. immigration officials for

issuance of an arrival and departure record, commonly referred to as Form I-94.

20.     The expenses incurred by Plaintiffs to come work for Defendant, as set out in Paragraphs 16 through 18, and for the issuance of Form I-94, as set forth in Paragraph 19, were primarily for the benefit of Defendant within the meaning of the FLSA, 29 C.F.R. §§531.32(c) and 778.217.

21.     Prior to coming to the United States to work for Defendant for the Spring 2011 season, Plaintiffs signed documents and were provided received a work contract at the offices of Defendant's agent in Monterrey.  Among other things, the contract stated that workers would be provided 40 hours of work each week for a period from April through July 2011 and that they would be compensated at a rate of $9.20 per hour for their labor

22.     The work contract described in Paragraph 21 constituted a working arrangement between Defendant and Plaintiffs within the meaning of the AWPA, 29 U.S.C. §1822(c).

23.     Prior to coming to the United States to work for Defendant for the Fall 2011-12 season, Plaintiffs signed documents and were provided received a work contract at the offices of Defendant's agent in Monterrey.  Among other things, the contract stated that workers would be furnished with 40 hours of work each week for the period from October 3, 2011 through  July 31, 2012 and that they would be compensated at a rate of $9.20 per hour for their labor.  Per the contract, Defendant agreed to pay the visa processing fees and the costs of return transportation to their hometowns in Mexico for those workers separated from their employment with Defendant prior to the contractual ending date.  This work contract constituted a working arrangement between Defendant and Plaintiffs within the meaning of the AWPA, 29 U.S.C. §1822(c).

24.     After their admission to the United States in for the Spring 2011 season as described in Paragraph 19, Plaintiffs traveled to Youngstown, Florida in a bus chartered by Rene Urbina.

25.     After their admission to the United States in for the Fall 2011-12 season as described in Paragraph 19, Plaintiffs traveled to Youngstown, Florida in a bus chartered by Rene Urbina.

**(Oyster Farming and Processing)**

26.     Oyster aquaculture is carried out using a variety of methods.  Farming of oysters has become the more prevalent method of production in recent years as consumption and other factors have pushed traditional harvesting methods beyond sustainable levels.

27.     Oysters shed sperms or eggs into the water and egg fertilization takes place either in the water or in the female oyster's brachial chambers, depending on the type of oyster.  Larvae are discharged in the water.   After three or four weeks, the larvae are ready to attach to a hard substance.  At this point, oyster growers place various kinds of material into the water to catch the larvae and culture the oysters.

28.     The most common method of oyster farming involves planting shells, usually from previously harvested oysters, into the water to catch the larvae.  The process of catching or attaching us called "culching," the catching material is called "cultch," and the recently settled oysters are called "spat." After clutching, the spatted culch is transported into a nursery area in natural waters.

29.     Oyster farmers purchase culched oyster seed or culchless larvae from hatcheries. Culchless larvae are then set by farmers onto cultch in settling tanks that require expensive equipment and temperature-controlling devices.  To be suitable for settling, tanks of seawater are

aerated, heated to favorable levels, and filled with bags of clean shell to catch the seed. Oyster seeds are kept in bags, lantern nets, or trays to protect them from environmental factors and scattering.  As the oyster grows, it is periodically transferred to larger containers to allow for increased growth and water flow.

30.     Oysters are permitted to grow for 1 to 2 years before they are mature and ready for the market.  The mature oysters are then harvested and packed into burlap sacks.

31.     Processors such as Defendant Webb's Seafood, Inc. buy shellstock from wholesalers and other processors and, in some cases, directly from harvesters.

32.     Processing plants, such as that operated by Defendant, manually shuck shellstock oysters and place them in several different sizes and types of containers for sale to restaurants, retailers and other processors.  Oysters for the halfshell market are sorted, graded and washed, and later placed in cardboard boxes and burlap sacks.  Shucked oyster meats are graded and sold according to size in 8-ounce and 12-ounce cups, or in pint, quart or gallon containers.

33.     Defendant specializes in post-harvest processed oysters, shucked oysters and half-shelled oysters.   It purchases mature live oysters on shells from farmer and/or wholesalers.

34.     Throughout the course of their employment with Defendant, Plaintiffs were employed in the handling and processing of oysters in their unmanufactured state.  Plaintiffs opened oysters with a knife or blade in a task known as "shucking."

35.     To shuck oysters, Plaintiffs inserted a shucking blade into the hinge between two oyster valves and twisted the blade until the oyster popped. The worker then slid the blade across to cut the adductor muscle holding the oyster together.

36.     Plaintiffs processed halfshell and fully shucked oysters.  Their co-workers, who were compensated on an hourly basis, graded washed and boxed or packaged the halfshells.

37.     Plaintiffs deposited fully shucked and grades oyster meat and deposited it into one-gallon containers.

38.     After completing the grading and shucking, Plaintiffs delivered the containers with the oysters to another worker in a station where the oysters were cleaned and prepared for packaging, freezing or immediate delivery to Defendant's customers.

39.     Defendant required Plaintiffs to wear shucking gloves as protection from shucking knives.  Defendant also required Plaintiff to wear hair nets, aprons and plastic boots while shucking oysters.

40.     During the Spring 2011 season, Plaintiffs worked from 30 to 40 hours per week. They were compensated at a piece rate of $7.20 per gallon of regular sized oysters and $10.00 per gallon of smaller-sized species oysters.   Plaintiffs were paid only their piece rate earnings, even though these earnings often totaled less than $9.20 per compensable hour worked.

41.     During the Spring 2011 season, Defendant failed to make, keep, and preserve payroll records for Plaintiffs for each pay period as required by the AWPA, 29 U.S.C. §1821(d)(1), and its implementing regulations, 29 C.F.R. §500.80(a).  Among other things, the payroll records did not show the basis on which wages were paid or the number of hours worked.

42.     During the Spring 2011 season, Defendant did not provide Plaintiffs on each pay day with an itemized pay statement as required by the AWPA, 29 U.S.C. §1821(d)(2), and its implementing regulations, 29 C.F.R. §500.80(d).  Among other things, the wage statements provided omitted the employer's Internal Revenue Service identification number, did not show the number of compensable hours worked, the basis on which wages were paid or the number of piece work units earned.

43.     During the Fall 2011-12 season Plaintiffs were provided with approximately only 16 hours (or two days) of work per week.  Plaintiffs were compensated at a piece rate of $7.20 per gallon of regular sized oysters and $10.00 per gallon of smaller-sized oysters.  Plaintiffs were paid only their piece rate earnings, even though these earnings often totaled less than $9.20 per compensable hour worked.

44.     During the Fall 2011-12 season, Defendant failed to make, keep, and preserve payroll records for Plaintiffs as required by the AWPA, 29 U.S.C. §1821(d)(1), and its implementing regulations, 29 C.F.R. §500.80(a).  Among other things, the payroll records did not show the basis on which wages were paid or the number of hours worked.

45.     During the Fall 2011-12 season, Defendant did not provide Plaintiffs on each pay day with an itemized pay statement as required by the AWPA, 29 U.S.C. §1821(d)(2), and its implementing regulations, 29 C.F.R. §500.80(d).  Among other things, the wage statements omitted the employer's Internal Revenue Service identification number, did not accurately reflect the number of compensable hours worked and did not show the basis on which wages were paid or the number of piece work units earned.

46.     Throughout the course of Plaintiffs' employment, Defendant withheld sums from Plaintiffs' wages for required tools, including gloves, aprons, and knives.  Plaintiffs purchased their own boots.  These tools and boots were primarily for the benefit of the Defendant within the meaning of the Fair Labor Standards Act and its implementing regulation, 29 C.F.R. §531.3(d).  No portion of these deductions was ever reimbursed to Plaintiffs.

47.     Defendant did not reimburse Plaintiffs for the expenses they incurred as described in Paragraphs 16 through 19 to the extent that these pre-employment costs brought their first

week's wages below the FLSA minimum wage, the Florida minimum wage, or the prevailing wage.

48.     Plaintiffs' employment during the Fall 2011-12 season was terminated without justification in December 2011, seven months prior to the contract termination date.  Defendant gave each of the Plaintiffs $100.00 and transported each of them to the U.S.-Mexican border via charter bus, but did not reimburse Plaintiffs as for the cost of returning to their homes in Guanajuato, Mexico.

## COUNT I

### (FAIR LABOR STANDARDS ACT)

49.     Plaintiffs bring this claim for Defendant's violations of the minimum wage provisions of the Fair Labor Standards Act.

50.     Defendant violated the minimum wage provisions of the FLSA, 29 U.S.C. §206(a), by failing to pay the Plaintiffs at least $7.25 for every compensable hour of labor performed during each workweek they were employed.

51.     The violations of the minimum wage provisions of the FLSA as set out in Paragraph 50 resulted in part from Defendant's failure to reimburse the Plaintiffs for pre-employment expenses they incurred primarily for the benefit of Defendant, as set forth in Paragraphs 16 through 19 and for work tools which primarily benefitted Defendant, as described in Paragraphs 39 and 46.

52.     As a consequence of Defendant's violations of the FLSA, Plaintiffs are entitled to recover the minimum wages due each of them plus an additional equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b).

## COUNT II

### (MINIMUM WAGE PROVISIONS OF FLORIDA CONSTITUTION)

53.     This count sets forth a claim for damages by Plaintiffs for violations by Defendant of the minimum wage provisions of the Florida Constitution, as implemented through the Florida Minimum Wage Act, § 448.110, Fla. Stat.

54.     Defendant failed to pay Plaintiffs in compliance with the minimum wage requirements of the Florida Minimum Wage Act.  The applicable minimum wage was $7.25 between April 2011 and May 31, 2011 and $7.31 between June 1, 2011 and December 31, 2011.

55.     As set forth in Paragraphs 16 through 19, 39 and 46, the wages of Plaintiffs were reduced below the Florida minimum wage as a result of costs incurred primarily for the benefit of Defendant.

56.     Plaintiffs have performed all conditions precedent to filing this action under the Florida Minimum Wage Act in accordance with § 448.110(6)(a), Fla. Stat., but Defendant has failed to pay the total amount of unpaid wages or otherwise resolve the claims to the satisfaction of Plaintiffs.

57.     As a result of Defendant's violations of the minimum wage provisions of the Florida Constituion and Florida Minimum Wage Act as described above, each of the Plaintiffs is entitled to recover the amount of his unpaid minimum wages, and an equal amount as liquidated damages, pursuant to § 448.110(6)(c), Fla. Stat.

## COUNT III

### (MIGRANT AND SEASONAL AGRICULTURAL
WORKER PROTECTION ACT)

### (Spring 2011 season)

58.     This count sets forth a claim by Plaintiffs for damages, declaratory relief and injunctive relief with respect to Defendant's violations of the AWPA and its attendant regulations during the Spring 2011 oyster processing season.

59.     At all times relevant to this action, Plaintiffs were employed in agricultural employment involving the handling, processing, freezing or grading prior to delivery for storage of an agricultural commodity in its unmanufactured state.

60.     Defendant violated its working arrangement with Plaintiffs by:

a.   Failing to pay Plaintiffs the prevailing wage for the first week of employment by failing to reimburse Plaintiffs for expenses they incurred primarily for the benefit of Defendant as set out in Paragraphs 16 through 19; and

b.   Failing to pay Plaintiffs a wage at least equal to the prevailing wage of $9.20 per hour, as promised in the Spring 2011 season contracts.

61.     Defendant failed to make, keep, and preserve payroll records for Plaintiffs as required by the AWPA, 29 U.S.C. §1821(d)(1), and its implementing regulations, 29 C.F.R. §500.80(a).  Among other things, the payroll records do not show the basis on which wages were paid on the number of hours worked.

62.     Defendant did not provide Plaintiffs on each pay day with an itemized pay statement as required by the AWPA, 29 U.S.C. §1821(d)(2), and its implementing regulations, 29 C.F.R. §500.80(d).  Among other things, the wage statements omitted the employer's Internal

15

Revenue Service identification number, the number of compensable hours worked, the basis on which wages were paid and the number of piecework units earned.

63.     The violations of the AWPA and its attendant regulations as set forth in this count were the natural consequences of the conscious and deliberate actions of Defendant and were intentional within the meaning of the AWPA, 29 U.S.C. §1854(c)(1).

64.     As a result of Defendant's violations of the AWPA and its attendant regulations as set forth in this count, Plaintiffs have suffered damages.

## COUNT III

**(MIGRANT AND SEASONAL AGRICULTURAL
WORKER PROTECTION ACT)**

**(Fall 2011-12 Season)**

65.     This count sets forth a claim by Plaintiffs for damages, declaratory relief and

injunctive relief with respect to Defendant's violations of the AWPA and its attendant

regulations during the Fall 2011-12 oyster processing season.

66.     At all times relevant to this action, Plaintiffs were employed in agricultural

employment involving the handling, processing, freezing or grading prior to delivery for storage

of an agricultural commodity in its unmanufactured state.

67.     Defendant violated without justification its working arrangement with Plaintiffs

by:

   a.   Failing to pay Plaintiffs the prevailing wage for the first week of employment

        by failing to reimburse Plaintiffs for expenses they incurred primarily for the

        benefit of Defendant as set out in Paragraphs 16 through 19; and

   b.   Failing to pay Plaintiffs a wage equal to the prevailing wage of $9.20 per

        hour, as promised in the Fall 2011 contracts;

   c.   Failing to provide the promised work from October 2011 through July 2012.

        In fact, Defendant ceased providing Plaintiffs the promised 40 hours of

        employment per week shortly after they commenced their employment in

        October; and

   d.   Failing to provide or pay for return transportation from Defendant's job site to

        Plaintiffs' homes after terminating their employment in December 2011.

68.     In contravention of the AWPA 29 U.S.C. § 1822(a), and 29 C.F.R. § 500.81 Defendant failed to pay Plaintiffs their wages when due.  Among other things Defendant failed to pay Plaintiffs their minimum wages as due under the minimum wage provisions of the Fair Labor Standards Act and the minimum wage provisions of the Florida Constitution, as implemented through the Florida Minimum Wages Act, and the prevailing wages due to them under their contracts.

69.     Defendant failed to make, keep, and preserve payroll records for Plaintiffs as required by the AWPA, 29 U.S.C. §1821(d)(1), and its implementing regulations, 29 C.F.R. §500.80(a).  Among other things, the payroll records did not show the basis on which wages were paid or the number of hours worked.

70.     Defendant did not provide Plaintiffs on each pay day with an itemized pay statement as required by the AWPA, 29 U.S.C. §1821(d)(2), and its implementing regulations, 29 C.F.R. §500.80(d).   Among other things, the wage statements omitted the employer's Internal Revenue Service identification number, the number of compensable hours worked, the basis on which wages were paid and the number of piecework units earned.

71.     The violations of the AWPA and its attendant regulations as set forth in this count were the natural consequences of the conscious and deliberate actions of Defendant and were intentional within the meaning of the AWPA, 29 U.S.C. §1854(c)(1).

72.     As a result of Defendant's violations of the AWPA and its attendant regulations as set forth in this count, Plaintiffs have suffered damages.

## COUNT V

### (BREACH OF EMPLOYMENT CONTRACT)

73.     This count sets forth a claim for damages resulting from Defendant's breach of its employment contract with Plaintiffs for the Fall 2011-12 season.

74.     The assurances Defendant provided in his temporary labor certification applications as described in Paragraph 13, supplemented by the promises made to Plaintiffs in the contracts provided to them by Defendant as described in Paragraphs 22 and 23, constituted the employment contracts between Plaintiffs and Defendant.

75.     Plaintiffs performed satisfactorily all employment duties and responsibilities required of them under the employment contracts with the Defendant.

76.     The Defendant breached its employment contract with Plaintiffs by:

  a.   Compensating Plaintiffs at rates below the applicable prevailing wage rate for their work; and

  b.   Failing to provide Plaintiffs with forty (40) hours of work each week of the stated contract period.

77.     Defendant's breach of its employment contract caused Plaintiffs substantial injuries, for which Plaintiffs are entitled to actual and consequential damages.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray that this Court will enter an order:

a.  Granting judgment in favor of the Plaintiffs and against Defendant on the Plaintiffs' claims under the Fair Labor Standards Act and awarding each of them the amount of his unpaid wages, along with an equal amount of liquidated damages;

b.  Granting judgment in favor of Plaintiffs and against Defendant on the Plaintiffs' claims under the Minimum Wage Provisions of the Florida Constitution and awarding each of them the amount of his unpaid wages, along with an equal amount of liquidated damages;

c.  Declaring that Defendant has violated the recordkeeping, wage statement, wage payment and working arrangement provisions of the Migrant and Seasonal Agricultural Worker Protection Act, as set forth in Counts II and II;

d.  Granting judgment in favor of Plaintiffs and against Defendant on the Plaintiffs' claims under the Migrant and Seasonal Agricultural Worker Protection Act as set forth in Count II and awarding each of them his actual damages or $500.00 in statutory damages, whichever is greater, for each violation of the Act set out in that Count;

e.  Granting judgment in favor of Plaintiffs and against Defendant on the Plaintiffs' claims under the Migrant and Seasonal Agricultural Worker Protection Act as set forth in Count III and awarding each of them his actual damages or $500.00 in statutory damages, whichever is greater, for each violation of the Act set out in that Count;

f.   Granting judgment in favor of Plaintiffs and against Defendant on the

Plaintiffs' claims on the breach of contract and awarding each of them as

actual or consequential damages;

g.   Permanently enjoining Defendant from further violations of the Migrant and

Seasonal Agricultural Worker Protection Act;

h.   Awarding Plaintiffs the cost of this action;

i.   Awarding Plaintiffs s a reasonable attorney's fee; and

j.   Granting such further relief as this Court deems just and equitable.

Respectfully submitted,

*/s/Karla C. Martinez*___
Florida Bar No.:  0094674
e-mail:  karla@floridalegal.org

*/s/Vanessa Coe*_____
Florida Bar No.:  0096788
e-mail:  vanessa@floridalegal.org

*/s/Gregory S. Schell*___
Florida Bar No.:  287199
e-mail:  greg@floridalegal.org

Florida Legal Services, Inc.
MIGRANT FARMWORKER JUSTICE
PROJECT
508 Lucerne Avenue
Lake Worth, Florida 33460-38
Tel.:    (561) 582-3921
Fax:    (561) 582-4884

Attorneys for Plaintiffs