_____
)
**JOSÉ ARAIZA-CALZADA,** )
**MANUEL VERA-LOPEZ,** )
**ANTONIO AGUIRRE-SANCHEZ,** )
**JOSÉ GUADALUPE AGUIRRE-SANCHEZ,** )
**RIGOBERTO AGUIRRE-SANCHEZ,** )
**JOSÉ DE JESUS MANDUJANO-PAREDES,** )
**JOSÉ GUADALUPE MANDUJANO-PAREDES,** )    CIVIL ACTION
**ANGEL AGUIRRE-SANCHEZ,** )
**ANTONIO VALDEZ-MENDOZA and** )
**DANIEL ARROYO-PUGA,** )     No. 5:13-cv-/RS/CJK
)
    **Plaintiffs,** )
**vs.** )
)
**WEBB'S SEAFOOD, INC.,** )
)
    **Defendant.** )
_____)

## AMENDED COMPLAINT FOR DAMAGES, COST OF LITIGATION, DECLARATORY RELIEF, INJUNCTIVE RELIEFAND ATTORNEY'S FEE

## PRELIMINARY STATEMENT

1.      This is an action by ten migrant agricultural workers employed by Webb's

Seafood, Inc. of Youngstown, Florida during two separate oyster processing seasons between

April and December 2011.  Plaintiffs bring this action to secure and vindicate rights afforded

them by the Fair Labor Standards Act, 29 U.S.C. §§201, *et seq*. ("FLSA"), the minimum wage

provisions of the Florida Constitution, Article X , Section 24, and the Migrant and Seasonal

Agricultural Worker Protection Act, 29 U.S.C. §§1801, *et seq*. ("AWPA").

2.     Defendant Webb's Seafood, Inc. failed to pay Plaintiffs minimum wages as required by the FLSA and the Florida Constitution, and overtime wages as required by the FLSA.   In addition, Webb's Seafood, Inc. violated the recordkeeping, wage statement, wage payment and working arrangement provisions of the AWPA and failed to pay wages and provide other benefits as required by federal regulations applicable to Plaintiffs' employment as guest workers and incorporated in Plaintiffs' employment contracts.

3.     Plaintiffs seek an award of money damages, declaratory and injunctive relief, consequential, and compensatory damages and pre- and post-judgment interest to make them whole for damages each of them suffered due to Defendant's violations of the law.   Plaintiffs seek declaratory and injunctive relief to ensure that they and other employees of Webb's Seafood, Inc. are not subjected to similar practices in the future.

## JURISDICTION

4.     Jurisdiction is conferred upon this Court by 29 U.S.C. §216(b), this action arising under the FLSA; by 29 U.S.C. §1854(a), this action arising under the AWPA; by 28 U.S.C. §1331, this action arising under the laws of the United States; and 28 U.S.C. §1367, providing supplemental jurisdiction over Plaintiffs' state law claims, because these state claims are so closely related to the federal claims that they form part of the same case or controversy

5.     Declaratory relief is authorized pursuant to 28 U.S.C. §§2201 and 2202.

## VENUE

6.     Venue is proper in this district pursuant to 28 U.S.C. §§1391(b) and (c). As set out herein, a substantial part of the events giving rise to Plaintiffs' claim occurred in this district. Defendant is a resident of this district, headquartered in Bay County, Florida.

## PARTIES

7.      Plaintiffs are citizens of and maintain their permanent residences in Mexico.  At all times relevant to this action, Plaintiffs were admitted to the United States under the H-2B temporary foreign worker visa program, 8 U.S.C. §1101(a)(15)(H)(ii)(b), administered in part by the United States Department of Labor.

8.      At all times relevant to this action, Plaintiffs were migrant agricultural workers within the meaning of the AWPA, 29 U.S.C. §1802 and 29 C.F.R. §500.20(p), in that they were employed in agricultural employment of a seasonal or temporary nature handling and processing oysters, an agricultural commodity, in their unmanufactured state and were required to be absent overnight from their permanent homes while engaged in agricultural employment with Defendant Webb's Seafood, Inc.

9.      Defendant Webb's Seafood, Inc. is a closely held Florida corporation that operates and maintains its principal address in Youngstown, Bay County, Florida.  At all times relevant to this action, Defendant was engaged in commerce within the meaning of the FLSA, 29 U.S.C. §203(s)(1)(A), in that it operated an oyster processing plant that imported and sold its products to businesses in various states outside of Florida.  At all times relevant to this action, Defendant employed Plaintiffs within the meaning of the FLSA, 29 U.S.C. §203(g).

10.      At all times relevant to this action Defendant Webb's Seafood, Inc. was an agricultural employer of Plaintiffs within the meaning of the AWPA, 29 U.S.C. § 1802(2), in that it operated a processing facility and employed Plaintiffs and other migrant agricultural workers.

## **FACTS**

### **(H-2B Visas and Recruitment of Workers)**

11.     An employer in the United States may import aliens to perform unskilled labor of a temporary nature if the United States Department of Labor certifies that: (1) there are insufficient available workers within the United States to perform the job, and (2) the employment of aliens will not adversely affect the wages and working conditions of similarly situated U.S. workers. 8 U.S.C. §1101(a)(15)(H)(ii)(b).  Aliens admitted in this fashion are commonly referred to as "H-2B workers."

12.     An employer seeking the admission of H-2B workers must first file a temporary labor certification application with the United States Department of Labor. 20 C.F.R. §655.20 (2008).  This application must include an attestation from the employer that it will abide with applicable regulatory requirements, including:

     a.    Payment to all workers of at least the applicable prevailing wage during the entire period of the H-2B labor certification. 20 C.F.R. §655.22(e) (2008).  The applicable prevailing wage for the Plaintiffs' employment during 2011 was $9.20 per hour.

     b.    Prohibition of payments by prospective employees to foreign recruiters who the employer engaged in the recruitment of H-2B workers. 20 C.F.R. §655.22(g)(2).

     c.    Limiting deductions from wages to those that are "reasonable."  The Department of Labor has determined that expenses related to the worker's procuring a visa and traveling from his home to the employer's worksite primarily benefit the employer and are not "reasonable" within the meaning of the FLSA.

Accordingly, the employer must pay the worker's inbound transportation and visa

fees in instances where shifting these costs to the worker would effectively bring

his earnings below the applicable minimum and/or prevailing wage for the first

workweek of employment. 20 C.F.R. §655.22(g)(1) (2008) and Field Assistance

Bulletin No. 2009-2, August 21, 2009.

13.     Because of a chronic shortage of domestic workers to work at its oyster

processing business, Defendant Webb's Seafood, Inc. applied for temporary labor certification to

employ foreign workers in certain jobs during 2011 and 2012, including, *inter alia*, shucking and

packing oysters. The two temporary labor certification applications identified Defendant Webb's

Seafood, Inc. as a prospective employer of H-2B workers and sought certification for a period

from April 12, 2011, to July 29, 2011 ("spring 2011 season") and October 3, 2011, to July 31,

2012 ("fall 2011-12 season"). These temporary labor certifications were prepared and filed on

behalf of Webb's Seafood, Inc. by its agent, USA Works of Lake Park, Georgia. The temporary

labor certification applications requested permission to import H-2B workers to pry open oyster

shells with a knife and remove the oyster from the shell, a task commonly referred to as

"shucking." Each of the temporary labor certifications contained an attestation pursuant to 20

C.F.R. §655.22 (2008) that Webb's Seafood, Inc. would abide with applicable regulatory

requirements, including those described in Paragraph 12.

14.     The United States Department of Labor reviewed Defendant's temporary labor

certification applications, each of which incorporated the terms described in Paragraph 12. The

United States Department of Labor ultimately approved each of Defendant's temporary labor

certification applications pursuant to 20 C.F.R. §655.23(b), allowing Defendant to import H-2B

workers to fill the manpower needs set out in its temporary labor certification applications for the periods from April 12, 2011, to July 29, 2011, and from October 3, 2011, to July 31, 2012.

15.     Plaintiffs maintain their permanent residences at various locations in Mexico, where they learned of the job opportunities with Webb's Seafood, Inc. for the spring 2011 and fall 2011-12 seasons.

16.     Prior to the commencement of the spring 2011 oyster processing season, Ester Gallegos, an employee or agent of USA Works and acting in her capacity as Defendant's agent, hired Plaintiffs and processed their applications for issuance of H-2B visas for employment on Defendant's operations.  Each Plaintiff was required to pay Ester Gallegos from $280.00 to $300.00 for visa processing fees and other costs.  Plaintiffs traveled at their own expense from their homes in central Mexico to Monterrey, Nuevo Leon, Mexico, for their visa interviews and rented rooms at a local hotel for several evenings while they awaited the processing of their visa applications.  Following interviews at the United States Consulate in Monterrey, Plaintiffs were issued H-2B visas for employment with Webb's Seafood, Inc. for a period from April 7, 2011, through July 29, 2011.  Plaintiffs then traveled at their own expense from Monterrey to Defendant's jobsite in Florida, where they were employed shucking oysters from April through July, 2011, after which time they returned to their homes in Mexico.   At the U.S.-Mexico border, each Plaintiff paid $6 for the issuance of Form I-94, an arrival-departure document issued by the United States Department of Homeland Security.

17.     Prior to the commencement of the fall 2011-12 oyster processing season, Plaintiffs were hired by Rene Urbano to perform the job duties described in the temporary labor certification application submitted by Webb's Seafood, Inc.  Urbano, an employee or agent of

USA Works and acting in his capacity as Defendant's agent, processed Plaintiffs' visa applications. Each Plaintiff was required to pay Urbano from $280.00 to $300.00 for visa processing fees and other costs. Plaintiffs traveled at their own expense from their homes in central Mexico to Monterrey, Nuevo Leon, Mexico, for their visa interviews and rented rooms at a local hotel for several evenings while they awaited the processing of their visa applications. Following interviews at the United States Consulate in Monterrey, Plaintiffs were issued H-2B visas for employment with Webb's Seafood, Inc. for a period from October 3, 2011, through July 31, 2012. Plaintiffs then traveled at their own expense from Monterrey to Defendant's jobsite in Florida, where they were employed shucking oysters for Webb's Seafood. At the U.S.-Mexico border, each Plaintiff paid $6 for the issuance of Form I-94, an arrival-departure document issued by the United States Department of Homeland Security.

18.     Defendant Webb's Seafood, Inc. failed to reimburse Plaintiffs for the expenses they incurred as described in Paragraphs 16 and 17, despite the fact that these expenses served to reduce Plaintiffs' first workweek earnings below the minimum wage established by the FLSA and the minimum wage provisions of the Florida Constitution, and the prevailing wage of $9.20 per hour.

19.     The pre-employment visa, lodging and transportation expenses incurred by Plaintiffs as set out in Paragraphs 16 and 17 were primarily for the benefit of Defendant, within the meaning of the FLSA, 29 C.F.R. §§531.32(c) and 778.217.

20.     Prior to coming to the United States to work for Defendant Webb's Seafood, Inc. during the spring 2011 season, Plaintiffs signed documents and were provided received a work

contract at the offices of Defendant's agent in Monterrey. Among other things, the contract stated that workers would be compensated at a rate of $9.20 per hour for their labor.

21. The work contract described in Paragraph 20 constituted a working arrangement between Defendant and Plaintiffs within the meaning of the AWPA, 29 U.S.C. §1822(c) with respect to the spring 2011 season.

22. Prior to coming to the United States to work for Defendant during the fall 2011-12 season, Plaintiffs signed documents and were provided received a work contract at the offices of Defendant's agent in Monterrey. Among other things, the contract stated that workers would be furnished with 40 hours of work each week for the period from October 3, 2011, through July 31, 2012, and that they would be compensated at a rate of $9.20 per hour for their labor. This work contract constituted a working arrangement between Defendant and Plaintiffs within the meaning of the AWPA, 29 U.S.C. §1822(c) with respect to the fall 2011-12 season.

**(Oyster Production)**

23. Webb's Seafood processes oysters extracted by various suppliers from the Gulf of Mexico region, primarily from Florida's Apalachicola Bay area and secondarily from Louisiana and Texas.

24. American oysters (*crassostrea virginica*) are produced naturally in coastal estuaries of the Gulf of Mexico region. Adult oysters shed sperms or eggs into the water column during late spring and summer and again in the early fall when water temperatures pass through 68 degrees Fahrenheit. Fertilization and larval development occur in the water column. After two weeks, the mature ubmo larvae are ready to attach to reefs or other hard substrates (cultch) on the bottom of the Gulf estuaries as oyster spat.

25.     Oyster production can be and often is enhanced by a process often termed "oyster farming."  Farming of oysters has become a preferred method of production in many areas of the Gulf in recent years as consumption and other adverse environmental factors have pushed traditional harvesting methods beyond sustainable levels.

26.     The most common method of oyster farming involves planting shells, usually from previous harvested oysters, or other materials (e.g., crushed concrete or limestone aggregates) on reefs or bottom leases to "catch" the oyster spat.  Cultch planting in the Gulf of Mexico generally occurs on a public reef or a public oyster bar, although some oyster farmers have private leases or private beds.  Some Gulf farmers purchase culched oyster seed or culchless larvae from hatcheries, set the larvae on cultch in temperature-controlled setting tanks and later place the seed or oyster on their leases or into suspended wire enclosures for grow-out and to reduce predation.

27.     State shellfish agencies in the Gulf Coast region occasionally plant or deposit cultch material on public oyster bars, beds, or reefs on suitably firm bottoms of Gulf estuaries. Florida's state shellfish agency, the Aquaculture Division of the Department of Agriculture and Consumer Services, plants clutch shells on public oyster beds, bars, and reefs in Apalachicola Bay and adjacent St. George and St. Vincent Sounds by spraying shells into the water using water cannons.

28.     Oysters are generally harvested in the northern Gulf of Mexico region when they reached a prescribed size or total length, usually one to two years after attaching to a hard surface as spat.  Each Gulf state regulates the size that the oysters must be to be eligible for harvest in order to reduce the over-fishing of the young, seed oysters.  Generally the minimum size is three

inches in length; however, the State of Louisiana permits the harvest of small oysters for the raw-bar, half shell market, but only from private oyster leases or beds. State shellfish enforcement agents monitor harvesting by boarding boats and measuring the catches or by measuring them when the oysters are landed at the dock.

29.     In order to be sold commercially, oysters must be collected or harvested from the public or private beds, bars, or reefs where they are grown, using long-handle tongs or rakes or oyster dredges. In addition, the majority of oysters are only put to commercial use after processing by businesses such as Defendant Webb's Seafood, Inc., which shucks or packs oysters.

30.     Gulf oysters are frequently harvested using a dredging method, which involves dragging a rigid metal frame with 4-inch downward pointing "teeth," and a rope bag to collect and contain the oysters and other reef materials. Once the dredge is brought onboard the harvest vessel, the fishermen culls the harvestable oysters from the seed oysters and cultch which are discharged back onto the bottom. The oyster fishermen may separate the harvested oysters into those most suitable for shucking at processing and those that can be sold for the oyster raw-bar or half-shell market.

**(Oyster Processing)**

31.     Processors such as Defendant Webb's Seafood, Inc. buy harvested shellstock from wholesalers and other processors and, in some cases, directly from oyster harvesters.

32.     Processing plants, such as that operated by Webb's Seafood, Inc., use workers to manually shuck oysters and place the meats in several different sizes and types of containers for sale to restaurants, retailers and other processors. Some processors use shucking machines that

help the workers to open the shells with less manual effort, which increases their efficiency and output.  Oysters for the half-shell market are sorted, graded and washed, and later placed in cardboard boxes and sacks for refrigeration and shipment.  Shucked oyster meats are graded and sold according to size in 8-ounce and 12-ounce cups, or in pint, quart or gallon containers and refrigerated for later shipment to customers and other dealers.

33.     Defendant Webb's Seafood, Inc. specializes in post-harvest processed oysters, shucked oysters and half-shell oysters.  Post-harvest processing involves the use of depuration, pasteurization, high pressure treatment, and/or irradiation to reduce the potential of bacteria or viral contamination of harvest oysters from the northern Gulf of Mexico region during the late spring to early fall periods when warm water temperatures increase the presence of naturally-occurring bacteria such as *vibrio vulnificus* which can cause deadly vibriosis in immune-compromised consumers of raw or incompletely cooked oysters.  These irradiation, heat and related treatments do not change the chemical composition of the oysters, which remain in an unmanufactured state following the treatments.  These treatments are similar to those applied to strawberries and other products to eliminate bacteria on the surface, without altering the chemical nature of the product.

34.     Throughout the course of their employment with Defendant Webb's Seafood, Inc., Plaintiffs were employed in the handling and processing of oysters in their unmanufactured state.  Plaintiffs shucked oysters for Webb's Seafood as described in the company's temporary labor certification applications.

35.     To shuck the oysters, Plaintiffs inserted a thick pointed, shucking blade into the hinge between two oyster valves and twisted the blade until the oyster popped.  The workers then slid the blade across to cut the adductor muscle holding the oyster together.  Some workers use

thin, sharp-bladed oyster knives that are inserted between the shells opposite from the hinge area to sever the adductor muscle and open the oysters shell.

36.     Plaintiffs processed both half-shell and fully shucked oysters. Some of their co-workers, who were compensated on an hourly basis, graded, washed, and boxed or packaged the half-shell oysters. Plaintiffs placed fully shucked and graded oyster meats into one-gallon containers. After completing the shucking and meat grading, Plaintiffs delivered the filled containers to a station where the container was weighed and its contents were cleaned and prepared for packaging, freezing, or immediate delivery to Defendant's customers.

37.     Defendant Webb's Seafood, Inc. required Plaintiffs to wear gloves as protection from shucking knives. In addition, Webb's Seafood required Plaintiffs to wear hair nets, aprons, and plastic boots while shucking oysters. While Webb's Seafood provided Plaintiffs with the hair nets at no cost, Plaintiffs were required to purchase their own oyster knives, gloves, aprons, and boots.

38.     On occasion during the spring 2011 season, Plaintiffs worked over 40 hours per workweek. They were compensated at a piece rate of $7.20 per gallon of regular-sized oysters and $10.00 per gallon of smaller-sized oysters. Plaintiffs were paid only their piece-rate earnings, even though those earnings often totaled less than $9.20 per compensable hour worked, and on occasion totaled less than the minimum wage levels established by the FLSA and the Florida Constitution. Defendant Webb's Seafood, Inc. failed to compensate Plaintiffs at one and a half times the regular rate for each hour worked over 40 in a workweek during the spring 2011 oyster processing season.

39.     During the spring 2011 oyster processing season, Defendant Webb's Seafood, Inc. failed to make, keep, and preserve payroll records with respect to Plaintiffs' labor as required by the AWPA, 29 U.S.C. §1821(d)(1), and its implementing regulations, 29 C.F.R. §500.80(a).  Among other things, the payroll records did not show the basis on which wages were paid or the number of hours worked shucking oysters on a piece-rate basis.

40.     During the spring 2011 oyster processing season, Defendant Webb's Seafood, Inc. failed to provide each Plaintiff on every pay day with an itemized pay statement as required by the AWPA, 29 U.S.C. §1821(d)(2), and its implementing regulations, 29 C.F.R. §500.80(d). Among other things, the wage statements provided omitted the employer's Internal Revenue Service identification number, did not show the number of compensable hours worked, the basis on which wages were paid, or the number of piece work units earned.

41.     During the time they were employed by Webb's Seafood, Inc. in the fall 2011-12 oyster processing season, Plaintiffs were provided with far fewer hours than promised in their employment contract, usually receiving only approximately 16 hours of work per week.  For their work during the fall 2011-12 oyster processing season, Plaintiffs were compensated at a piece rate of $7.20 per gallon of regular sized oysters and $10.00 per gallon of smaller-sized oysters.  Plaintiffs were paid only their piece rate earnings, even though these earnings often totaled less than $9.20 per compensable hour worked, and on occasion totaled less than the minimum wage levels established by the FLSA and the Florida Constitution.

42.     During the fall 2011-12 oyster processing season, Defendant Webb's Seafood, Inc. failed to make, keep, and preserve payroll records with respect to Plaintiffs' labor as required by the AWPA, 29 U.S.C. §1821(d)(1), and its implementing regulations, 29 C.F.R.

§500.80(a). Among other things, the payroll records did not show the basis on which wages were paid or the number of hours worked shucking oysters on a piece-rate basis.

43. During the fall 2011-12 oyster processing season, Defendant Webb's Seafood, Inc. failed to provide each Plaintiff on every pay day with an itemized pay statement as required by the AWPA, 29 U.S.C. §1821(d)(2), and its implementing regulations, 29 C.F.R. §500.80(d). Among other things, the wage statements omitted the employer's Internal Revenue Service identification number, did not accurately reflect the number of compensable hours worked and did not show the basis on which wages were paid or the number of piece work units earned.

44. Throughout the course of Plaintiffs' employment, Defendant Webb's Seafood, Inc. withheld sums from Plaintiffs' wages for required tools, including gloves, aprons, and knives. Plaintiffs purchased their own boots. These tools and boots were primarily for the benefit of Defendant Webb's Seafood, Inc., within the meaning of the Fair Labor Standards Act and its implementing regulation, 29 C.F.R. §531.3(d). No portion of these expenditures was ever reimbursed to Plaintiffs.

45. Defendant Webb's Seafood, Inc. did not reimburse Plaintiffs for the expenses they incurred as described in Paragraphs 16 and 17 to the extent that these pre-employment costs brought their first week's wages below the FLSA minimum wage, the Florida minimum wage, or the prevailing wage.

46. Plaintiffs' employment during the fall 2011-12 oyster processing season was terminated without justification in December 2011, seven months prior to the contract termination date.

## COUNT I

## (FAIR LABOR STANDARDS ACT)

47.     This count sets forth a claim by Plaintiffs for Defendant Webb's Seafood, Inc.'s violations of the minimum wage provisions of the Fair Labor Standards Act.

48.     Defendant Webb's Seafood, Inc. violated the minimum wage provisions of the FLSA, 29 U.S.C. §206(a), by failing to pay Plaintiffs at least $7.25 for every compensable hour of labor performed during each workweek they were employed.

49.     The violations of the minimum wage provisions of the FLSA as set out in Paragraph 48 resulted in part from Defendant's failure to reimburse Plaintiffs for pre-employment expenses they incurred primarily for the benefit of Defendant, as set forth in Paragraphs 16 and 17, and for work tools which primarily benefitted Defendant, as described in Paragraphs 37 and 44.

50.     As a consequence of Defendant Webb's Seafood, Inc.'s violations of the FLSA, Plaintiffs are entitled to recover the minimum wages due each of them, plus an additional equal amount in liquidated damages pursuant to 29 U. S. C. §216(b).

## COUNT II

### (MINIMUM WAGE PROVISIONS OF FLORIDA CONSTITUTION)

51.     This count sets forth a claim for damages by Plaintiffs for Webb's Seafood, Inc.'s violations of the minimum wage provisions of the Florida Constitution.

52.     Defendant Webb's Seafood, Inc. failed to pay Plaintiffs in compliance with the minimum wage requirements of the Florida Constitution.  The applicable minimum wage was $7.25 between April 2011 and May 31, 2011, and $7.31 between June 1, 2011, and December 31, 2011.

53.     As set forth in Paragraphs 16, 17, 37, and 44, Plaintiffs' wages were reduced below the Florida minimum wage as a result of costs incurred primarily for the benefit of Defendant Webb's Seafood, Inc.

54.     As a result of Defendant Webb's Seafood, Inc.'s violations of the minimum wage provisions of the Florida Constitution as described in this count, each of the Plaintiffs is entitled to recover the amount of his unpaid minimum wages, and an equal amount as liquidated damages.

# COUNT III

## (MIGRANT AND SEASONAL AGRICULTURAL
## WORKER PROTECTION ACT)

### (Spring 2011 Oyster Processing Season)

55.     This count sets forth a claim by Plaintiffs for damages, declaratory relief, and injunctive relief with respect to Defendant Webb's Seafood, Inc.'s violations of the AWPA and its attendant regulations during the spring 2011 oyster processing season.

56.     At all times relevant to this action, Plaintiffs were employed in agricultural employment involving the handling, processing, freezing, or grading prior to delivery for storage of an agricultural commodity in its unmanufactured state.

57.     In violation of the AWPA, 29 U.S.C. §1822(c), Defendant Webb's Seafood, Inc. violated without justification violated its spring 2011 oyster processing season working arrangement with Plaintiffs by:

a. Failing to pay Plaintiffs the prevailing wage for the first week of employment, in part by failing to reimburse Plaintiffs for expenses they incurred primarily for the benefit of Defendant as set out in Paragraph 16;

b. Failing to pay Plaintiffs a wage at least equal to the prevailing wage of $9.20 per hour, as promised in the spring 2011 oyster processing season contract; and

c. Failing to pay Plaintiffs minimum wages and overtime wages as required by the FLSA.

58.     Defendant Webb's Seafood, Inc. failed to make, keep, and preserve payroll records with respect to Plaintiffs' employment during the spring 2011 oyster processing season

as required by the AWPA, 29 U.S.C. §1821(d)(1), and its implementing regulations, 29 C.F.R. §500.80(a). Among other things, the payroll records do not show the basis on which wages were paid on the number of hours worked while shucking oysters on a piece-rate basis.

59. Defendant Webb's Seafood, Inc. failed to provide each Plaintiff on every pay day during the spring 2011 oyster processing season with an itemized pay statement as required by the AWPA, 29 U.S.C. §1821(d)(2), and its implementing regulations, 29 C.F.R. §500.80(d). Among other things, the wage statements omitted the employer's Internal Revenue Service identification number, the number of compensable hours worked, the basis on which wages were paid, and the number of piece-work units earned.

60. Defendant Webb's Seafood, Inc. violated the AWPA, 29 U.S.C. §1822(a), by failing to pay Plaintiffs their wages when due for work performed during the spring 2011 oyster processing season. Webb's Seafood, Inc. failed to pay Plaintiffs minimum and overtime wages as required by the FLSA for this work. Webb's Seafood, Inc. also failed to pay Plaintiffs minimum wages as required by the Florida Constitution for their work during the spring 2011 oyster processing season. Finally, Webb's Seafood, Inc. failed to pay Plaintiffs wages at least equal to the prevailing wage of $9.20 for their work during the spring 2011 oyster processing season.

61. The violations of the AWPA and its attendant regulations as set forth in this count were the natural consequences of the conscious and deliberate actions of Defendant Webb's Seafood, Inc. and were intentional within the meaning of the AWPA, 29 U.S.C. §1854(c)(1).

62. As a result of Defendant Webb's Seafood, Inc.'s violations of the AWPA and its attendant regulations as set forth in this count, Plaintiffs have suffered damages.

## COUNT IV
## (MIGRANT AND SEASONAL AGRICULTURAL
## WORKER PROTECTION ACT)

### (Fall 2011-12 Oyster Processing Season)

63.     This count sets forth a claim by Plaintiffs for damages, declaratory relief, and injunctive relief with respect to Defendant's violations of the AWPA and its attendant regulations during the fall 2011-12 oyster-processing season.

64.     At all times relevant to this action, Plaintiffs were employed in agricultural employment involving the handling, processing, freezing, or grading prior to delivery for storage of an agricultural commodity in its unmanufactured state.

65.     In violation of the AWPA, 29 U.S.C. §1822(c), Defendant Webb's Seafood, Inc. violated without justification violated its 2011-12 fall oyster processing season working arrangement with Plaintiffs by:

    a.     Failing to pay Plaintiffs the prevailing wage for the first week of employment, in part because of failing to reimburse Plaintiffs for expenses they incurred primarily for the benefit of Defendant as set out in Paragraph 17;

    b.   Failing to pay Plaintiffs a wage at least equal to the prevailing wage of $9.20 per hour, as promised in the fall 2011-12 oyster processing season contracts; and

    c.   Failing to provide the promised 40 hours per week of work during the contract period, from October 2011 through July 2012.

66.     Defendant Webb's Seafood, Inc. violated the AWPA, 29 U.S.C. §1822(a), by failing to pay Plaintiffs their wages when due for work performed during the fall 2011-12 oyster

processing season. Webb's Seafood, Inc. failed to pay Plaintiffs minimum wages as required by the FLSA and the Florida Constitution. Webb's Seafood, Inc. also failed to pay Plaintiffs wages at least equal to the prevailing wage of $9.20 for their work during the fall 2011-12 oyster processing season.

67.     Defendant Webb's Seafood, Inc. failed to make, keep, and preserve payroll records with respect to Plaintiffs' employment during the fall 2011-12 oyster processing season as required by the AWPA, 29 U.S.C. §1821(d)(1), and its implementing regulations, 29 C.F.R. §500.80(a). Among other things, the payroll records did not show the basis on which wages were paid or the number of hours worked shucking oysters on a piece-rate basis.

68.     Defendant Webb's Seafood, Inc. failed to provide each Plaintiff on every pay day during the fall 2011-12 oyster processing season with an itemized pay statement as required by the AWPA, 29 U.S.C. §1821(d)(2), and its implementing regulations, 29 C.F.R. §500.80(d). Among other things, the wage statements omitted the employer's Internal Revenue Service identification number, the number of compensable hours worked, the basis on which wages were paid and the number of piecework units earned.

69.     The violations of the AWPA and its attendant regulations as set forth in this count were the natural consequences of the conscious and deliberate actions of Defendant Webb's Seafood, Inc. and were intentional within the meaning of the AWPA, 29 U.S.C. §1854(c)(1).

70.     As a result of Defendant Webb's Seafood, Inc.'s violations of the AWPA and its attendant regulations as set forth in this count, Plaintiffs have suffered damages.

## COUNT V

### (BREACH OF EMPLOYMENT CONTRACT)

71.     This count sets forth a claim for damages resulting from Defendant Webb's Seafood, Inc.'s breach of its employment contracts with Plaintiffs during spring 2011 and fall 2011-12 oyster processing seasons.

72.     The assurances Defendant Webb's Seafood, Inc. provided in its temporary labor certification applications as described in Paragraphs 12 and 13, supplemented by the promises made to Plaintiffs in the contracts provided to them by Defendant as described in Paragraphs 22 and 24, constituted employment contracts between Plaintiffs and Defendant Webb's Seafood, Inc.

73.     Plaintiffs performed satisfactorily all employment duties and responsibilities required of them under the employment contracts with Defendant.

74.     Defendant breached its employment contracts with Plaintiffs by:

a.  Compensating Plaintiffs at rates less than the applicable prevailing wage rate for their work;

b.  Not compensating Plaintiffs at one and one half times their regular rate for overtime work for overtime work during the spring 2011 oyster processing season; and

c.  Failing to provide Plaintiffs with forty (40) hours per week of work for the stated contract period of the fall 2011-12 oyster processing season.

75.     Defendant Webb Seafood, Inc.'s breach of its employment contracts caused Plaintiffs substantial injuries, for which Plaintiffs are entitled to actual and consequential damages.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray that this Court will enter an order:

a. Granting judgment in favor of Plaintiffs and against Defendant Webb's Seafood, Inc. on Plaintiffs' claims under the Fair Labor Standards Act and awarding each of them the amount of his unpaid minimum wages, along with an equal amount of liquidated damages;

b. Granting judgment in favor of Plaintiffs and against Defendant Webb's Seafood, Inc. on Plaintiffs' claims under the minimum wage provisions of the Florida Constitution and awarding each of them the amount of his unpaid wages, along with an equal amount of liquidated damages;

c. Declaring Defendant Web's Seafood, Inc. has violated the record-keeping, wage-statement, wage-payment, and working-arrangement provisions of the Migrant and Seasonal Agricultural Worker Protection Act, as set forth in Counts III and IV;

d. Granting judgment in favor of Plaintiffs and against Defendant Webb's Seafood, Inc. on Plaintiffs' claims under the Migrant and Seasonal Agricultural Worker Protection Act as set forth in Count III and awarding each of them his actual damages or $500.00 in statutory damages, whichever is greater, for each violation of the Act set out in that Count;

e. Granting judgment in favor of Plaintiffs and against Defendant Webb's Seafood, Inc. on Plaintiffs' claims under the Migrant and Seasonal Agricultural Worker Protection Act as set forth in Count IV and awarding each of them his actual

damages or $500.00 in statutory damages, whichever is greater, for each violation of the Act set out in that Count;

f.   Granting judgment in favor of Plaintiffs and against Defendant Webb's Seafood, Inc. on Plaintiffs' contract claims as set forth in Count V and awarding each of them his actual and consequential damages;

g.   Permanently enjoining Defendant Webb's Seafood, Inc. from further violations of the Migrant and Seasonal Agricultural Worker Protection Act;

h.   Awarding Plaintiffs the cost of this action;

i.   Awarding Plaintiffs a reasonable attorney's fee with respect to their claims under the FLSA and the minimum wage provisions of the Florida Constitution;

j.   Awarding Plaintiffs a reasonable attorney's fee with respect to their claims under the wage payment provisions of the AWPA, 29 U.S.C. §1822(a), in accordance with §448.08, Fla. Stat.; and

k.   Granting such further relief as this Court deems just and equitable.

Respectfully submitted,

*/s/Karla C. Martinez*___
Florida Bar No.:  0094674
Email:  karla@floridalegal.org
*/s/Vanessa Coe*_____
Florida Bar No.:  0096788
Email:  vanessa@floridalegal.org
*/s/Gregory S. Schell*___
Florida Bar No.:  287199
Email:  greg@floridalegal.org
Florida Legal Services, Inc.
MIGRANT FARMWORKER JUSTICE
      PROJECT
508 Lucerne Avenue
Lake Worth, Florida 33460-38
Tel.:    (561) 582-3921
Fax:     (561) 582-4884
Attorneys for Plaintiffs